---

## F. LEWALD & CO. v. BARNES.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1919. Rehearing Denied December 5, 1919.)

No. 2714.

PATENTS ☜328—FOR CUFF BUTTONS NOT INFRINGED.

The Barney patent, No. 885,135, for separable cuff link buttons, *held* not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by C. Clarence Barnes, trustee, against F. Lewald & Co. Decree for complainant, and defendant appeals. Reversed.

Edward Rector and Walter H. Chamberlin, both of Chicago, Ill., for appellant.

Laurence A. Janney, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge. The appeal is from a decree finding infringement of United States patent No. 885,135, 1908, to Barney relating to separable cuff link buttons. Infringement is the sole issue. Figures 1, 2, and 3 of the patent are:

Fig. 1 shows the button in position, the inner flanges having been passed through the button holes of the cuffs leaving the button faces B, B' in position, the connecting link flexibly holding the two button members in relatively similar position to accommodate the inclination of the cuff ends m, m. In Fig. 2 link r, r is mounted revolubly in the left button member of the figure, its revolution being effected by the small cross-piece 1, the head a' of the free end of the link being inserted through a slot in the other button member, and by means of a quarter turn of the link held by engagement with the inner side of the slot plate, and withdrawable therefrom only by turning the link to bring the head in alignment with the slot. A pressure spring keeps the link from automatically turning, and the revolving of the button members themselves (whereby the link head might become withdrawn and the button members separated) is prevented by the stiffness of the cuff which holds in place between the edges of the button-holes the flat connecting shank between the two flanges of each button member.

· Such buttons are useful in that the separate members may be inserted through the buttonholes, and the cuff while on the wrist may be readily fastened by the opposite hand, and unfastened without need of removing one of the button members from the buttonhole, and there is no likelihood when the cuff is not buttoned together, of the separate parts dropping from the cuff.

Concededly the device which the patent describes is useful only in a stiff cuff, with the stiff buttonhole edges of which, as indicated, the device must coact in order to be effective. That this is contemplated by the patent is further manifest from that part of the specification which reads:

"Of course the same result (bringing the head of the link in alignment with the slot so that by revolving the link the head may enter or be withdrawn from the slot) may be attained by simply turning one or the other of the button members B B' 90°, but this action is obviously impracticable when they are mounted in the buttonholes of the starched cuff."

Admittedly the device of the patent could not be used for soft cuffs, the buttonholes of which would afford no resistance to the turning of the button members, and their consequent falling apart; and when in about 1910 soft cuffs were coming more in vogue, demand arose for a separable link button for that use. The link of the then commercial Barney button could not be so employed, nor was the special adaptability of the described Barney device to the relative inclination of the two ends of the stiff link cuff a factor in the soft cuff problem, where there was no fixed relative inclination of the cuff ends calling for adjustability or flexibility as between the two button members. Thereupon appellant brought out, and for some years has been making and selling the alleged infringing button designed for soft cuffs and consisting of two parts, each having an outside button head and an inner flange, with a ball produced from the inner flange of one of the parts, adapted to snap into and out of a spring socket in the inner flange of the other button part, the two parts being joined by the ordinary snap joint thus formed, and being attached or separated by manual pressure.

Claim 1 of the patent in suit is as follows:

"As an improved article of manufacture a separable cuff link button, the same comprising a pair of independent button members each provided with a fixed shank terminating in a lateral flange or enlargement adapted to pass through a buttonhole of the cuff and retain said member therein, a swinging coupling member or link mounted on one of the button members and extending longitudinally beyond its flange, and having the free end of said link constructed to engage with the fellow button member for detachably securing them together."

Appellant contends that its button is not within the purview of the Barney conception, and that, even if claim 1 were literally readable upon it, when construed in the light of the prior art and the problem Barney undertook to solve, the claim cannot be held to cover appellant's device. Moreover, appellant insists that in its button there is an entire absence of that element in the claim set forth as "a swinging coupling member or link mounted in one of the button members." It is appellee's contention that this element of the claim is found in appellant's device in the adjustability of the parts by reason of the snap joint not being absolutely rigid, but subject to more or less of movement; that the claim itself does not require the link to swing in the member upon which it is mounted, but that the swinging may take place in the opposite member to which in use it is detachably secured; and that even if, by the terms of the claim, the link swings from the member on which it is mounted, the rigidity of its mounting in appellant's button, and the swinging action in the opposite button member, would be but a reversal of the operation of the parts, whereby no different result is secured, and infringement would not be thereby avoided.

Our study of the record convinces us that Barney was dealing only with a problem of cuff buttons with detachable part, readily conformable to the surface of the stiffly starched link cuff. He had to have such mobility and flexibility of the two parts as would leave them in relatively similar position, not controlling or influencing the shape or inclination of the cuff, but conforming to the cuff surface. This is what Barney described—button members which must have relatively similar adjustability. Of course the old chain or link fastening between the cuff buttons left the buttons to conform themselves to the position of the cuffs, and where the link was rigid to the buttons, the latter were inclined at such angle as would conform approximately to the probable inclination of the cuff. But Barney was trying to accomplish the same result with buttons which might be readily joined or separated as indicated, while the wearer has the cuffs on, and without likelihood when separated of the parts dropping from the cuffs. It is manifest that if, instead of the link swinging in the member in which it is mounted, it had been rigid thereon, Barney's button would have been a failure for use on stiff cuffs, in that whatever flexibility might have been secured through the swinging attachment of the free end of the link to the opposite side, there would be no adjustability of the member to which the link was rigidly attached. If the link were attached rigidly at right angles to one member, and there was mobility only with the opposite member, it is apparent that the rigidly attached button would either

not lie flat against the cuff, or would force that end of the cuff either forward or backward from the other end, so that the ends would not be even.

The scope and law of the invention seem to be well indicated where, referring to the connecting link, the specification describes "a swinging spring pressed rotatable central link or tongue mounted in one of said front heads and extending longitudinally through its shank and back head and being detachably connected in a yielding or flexible manner with the back head of the other button member," thus indicating flexibility and conformability at both ends of the link.

It seems that about 1910 Barney also went to work on the problem presented by the soft cuff, and he then brought out his types E, F, and G, which were offered in evidence, and which some years later came into commercial use; but it is to be noted that while in those types he abandoned the revolubility of the connecting link as described in each of them he retained the element of the connecting link *swinging in the member on which it is mounted*. It does not appear from the evidence that this was necessary for the purpose of producing a button effective for soft cuffs, but whether Barney was or was not aware of this, he still clung to the link which swung on the member on which it was mounted, and as late as 1918 he licensed another model of soft cuff link button which is likewise swingingly mounted on one member, the free end, as in appellant's button being joined to the other member by a snap joint. It does not appear that appellee ever conceived or undertook to make a button wherein the link is rigidly held by the member on which it is mounted.

Buttons composed of separable parts, each having two flanges for inserting in different garments or parts of garments, to be fastened together by the union of the button parts, are old. Newman (patent 227,700, 1880) shows a cuff button in two parts, each having two flanges, one part having a rigidly attached compressable protruding ball to be pressed into a socket in one of the flanges of the other part. True it was not used for so-called link cuffs, but for the ordinary cuffs with overlapping buttonholes; and while the evidence does not show that link cuffs were then in use, all that would be required to adapt it for the link cuff was to put a face on the under side. Indeed even this was not necessary, for the faces need not be the same, being just a matter of choice. Appellant's device is far more nearly an adaptation of Newman than of Barney. Newman's button as shown in his patent would have served link cuffs, not so well as Barney's for the stiff cuffs, but better for soft cuffs.

Buchanan (patent 12,020, 1902) and Marks (712,080, 1902) both show what in principle is very much akin to appellant's button. They are not stated to be cuff buttons, but they show what appear to be two ordinary collar buttons, the head of one constituting a ball or having a rigidly attached ball to be inserted in a socket in the lower flange of the other, whereby one of the parts being fastened into the lower end of a detachable cuff, and the other into the wristband of the shirt, the cuff is readily attachable and detachable by snapping or unsnapping the ball of one of the button parts into or out of the socket in the

other. If such device were inserted in the buttonholes of soft cuffs we would have the same result and the same possibilities as with appellant's button, the matter of shape or ornamentation of the faces not involving invention.

We are satisfied that claim 1 of the patent in suit contemplates as one of its essential elements a link or coupling member which swings in the button member on which it is mounted, and that appellant's device does not embody this element or its equivalent, and it does not therefore infringe.

The decree of the District Court is reversed, with direction to dismiss appellee's bill.